IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

J&J SNACK FOODS CORP.,

                Plaintiff,

    v.

RUIZ FOOD PRODUCTS, INC.,

                Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 15-7804 (JBS/AMD)

**OPINION**

APPEARANCES:

Darren H. Goldstein, Esq.
A. Fred Ruttenberg, Esq.
Damien Nicholas Tancredi, Esq.
FLASTER GREENBERG P.C.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
    Attorneys for Plaintiff, J & J Snack Foods Corp.

Deborah J. Israel, Esq.
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
1200 Nineteenth Street NW, Suite 500
Washington, DC 20036
    Attorney for Defendant Ruiz Food Products, Inc.

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

Plaintiff J&J Snack Foods Corp. ("J&J") brings this action against Defendant Ruiz Food Products, Inc. ("Ruiz"), alleging a bad faith breach of contract arising out of the termination of an asset purchase agreement between J&J, the seller, and Ruiz, the buyer. J&J contends that Ruiz has misused confidential information provided in the course of negotiating a sale for the

purpose of illegal competition, causing "significant and irreparable" harm with respect to J&J's Patio brand, in breach of the parties' confidentiality agreement.

Because the letter of intent is not contractually binding, because there is no implied covenant of good faith and fair dealing in this case under Delaware law, and because J&J fails to allege any bad faith on the part of Ruiz, the Court will grant Ruiz's motion to dismiss. The dismissal will be without prejudice, however, with respect to J&J's right to amend to set forth an actionable claim for breach of the confidentiality agreement.

## II.  BACKGROUND

J&J and Ruiz both engage in the sale and distribution of frozen foods under various brand names. In the present matter, J&J's Patio brand, under which J&J sells frozen burritos, and Ruiz's competing El Monterey brand are at issue.

On April 13, 2015, Karen Martin, a representative of Ruiz, initiated a call with Gerald Schreiber, the CEO of J&J, expressing Ruiz's interest in purchasing J&J's Patio brand. (Compl. at ¶ 9.) On May 19, J&J and Ruiz entered into a confidentiality agreement dated May 13 (the "Confidentiality Agreement"), pursuant to which Ruiz agreed to keep certain materials provided by J&J strictly confidential and not to use such materials for any purpose other than to evaluate,

negotiate, and consummate an acquisition of certain J&J assets (specifically, the Patio brand). (See generally Ex. B.)

On July 8, 2015, J&J and Ruiz executed a letter of intent ("LOI"), which specified the assets to be acquired, the purchase price, post-closing escrow, and other material terms of the anticipated sale of the Patio brand. (Ex. A.) This LOI contains a choice of law provision requiring the application of Delaware law. (Id. at ¶ 10.)

Based on the execution of the LOI, in July and August of 2015, and pursuant to the Confidentiality Agreement, J&J disclosed confidential and proprietary information to Ruiz regarding the Patio brand, including (1) ingredient specifications; (2) product formulas; (3) pricing information related to the production and sale of the Patio brand products; (4) gross dollar and case sales of Patio brand products organized by individual stock keeping unit (SKU); (5) EBIDTA from May 2011 until present; (6) gross sales by customer organized by SKU; (7) Walmart reset information; and (8) vendor lists. (Compl. at ¶ 16.) J&J contends such information would cause "significant and irreparable" business harm if used by Ruiz or others to compete. (Id.) The Complaint seeks to "enjoin Ruiz from using or disclosing any information disclosed by J&J to Ruiz following the execution of the Confidentiality

Agreement." (Id. at p. 8, ¶ (c).)

In July of 2015, Ruiz's counsel drafted and presented a draft asset purchase agreement ("APA") to effectuate the sale, whereupon J&J drafted and presented revisions. (Id.) Ruiz responded with certain issues that were later discussed, and J&J contends none of the issues presented any insurmountable obstacles to effectuating the sale. (Id.) Ruiz allegedly agreed to draft and send to J&J a further revised APA, but never did so. (Id.)

On August 25, 2015, Ms. Martin left a voicemail for Gerard Law, J&J's Senior Vice President, stating that there was nothing in her mind or Mr. Auchertlonie's, Ruiz's CEO, that would keep the sale from closing, and confirmed that Ruiz anticipated revising the APA later that week. (Id.) By August 31, Ruiz posted the following documents to a data room available to both parties in connection with the sale: (i) Post Closing Obligations – Draft Schedule; (ii) Bank of America Merrill Lynch Escrow Template Agreement; (iii) Inventory Verification Provisions; and (iv) Non-Competition Agreement. (Id.)

On September 1, 2015, Ruiz informed J&J that the sale would not move forward, and Ruiz terminated further negotiations. (Id.) J&J alleges that Ruiz gave J&J no meaningful explanation for not proceeding with the sale, nor made any efforts to negotiate with J&J following the LOI regarding, among other

things, (a) the consideration to be paid for the Patio brand;
(b) the scope of the assets to be sold; or (c) any liabilities
to be assumed.  (Id.)  Ruiz allegedly made no comments and had
no questions regarding, among other things, the earnings or
other financial data, or geographic sales information provided
by J&J.  (Id.)

Based on the foregoing, on September 18, 2015, J&J filed a
two-count complaint for damages and injunctive relief in the
Superior Court of New Jersey, Camden County.  On October 30,
2015, Ruiz timely removed this action to the District of New
Jersey pursuant to 28 U.S.C. §§ 1332, 1441, and 1444.  [Docket
Item 1.]  J&J alleges in its complaint that Ruiz at no relevant
time intended to effectuate or negotiate in good-faith the
purchase of J&J's Patio brand.  (Id.)  J&J further alleges that
Ruiz improperly used J&J's efforts to effectuate the potential
sale in order to obtain confidential and proprietary J&J data in
furtherance of unlawful competition.  (Id.)

Count I asserts a breach of the contractual obligation to
negotiate in good faith.  (Id.)  J&J contends that the LOI
created a contractual obligation to negotiate in good faith
toward completing the sale.  (Id.)  Because there were
supposedly no insurmountable obstacles impeding the sale, and
because the major terms of sale were already agreed upon in the
LOI (such as price to be paid, the assets to be sold, and

4

general timing), J&J believes that but for Ruiz's actions, the sale would have successfully closed.  J&J concludes Ruiz terminated the sale for illegitimate purposes. Count II, pled in the alternative, purports that Ruiz's termination constitutes a breach of the implied duty of good faith and fair dealing.

On December 7, 2015, Ruiz filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), seeking to dismiss with prejudice J&J's entire complaint on the following grounds.  Ruiz argues that the LOI provides either party the absolute right to terminate the proposed deal during a limited 60-day due diligence period for "any reason or no reason."  (Ex. A at ¶ 4.) Ruiz also contends that the LOI creates no legal obligation on its behalf.  (Id. at ¶ 14.)  Additionally, Ruiz argues that there is no specific allegation by J&J regarding how Ruiz is in breach of its Confidentiality Agreement.  Ruiz claims that J&J merely seeks to force Ruiz into furthering a sale it no longer wishes to participate in. J&J, in opposition, insists that a breach of contractual obligation occurred and that Ruiz acted in bad faith.

III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and draw all reasonable

inferences in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam).

A motion to dismiss may be granted only if a court concludes the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  A plaintiff must plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," Twombly, 550 U.S. at 556, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678.

## IV. DISCUSSION

In essence, J&J contends that a contractual obligation was created by the LOI, and that because Ruiz unilaterally terminated the sale without providing reasoning satisfactory to J&J, Ruiz therefore must have breached the LOI's purported contractual obligation for the purposes of obtaining Patio's confidential information and competing unfairly.  (See Compl. at ¶¶ 28-37.)  Ruiz, in turn, asserts that no contractual

obligation was ever created, that Ruiz did not act in bad faith, and that J&J fails to allege any specific facts of bad faith. Delaware law provides the rule of decision, as agreed by the parties and as reflected in their briefing here.

### A. The LOI did not create any contractual obligations to negotiate and consummate the sale.

J&J contends that the LOI created a contractual obligation between the parties to effectuate the sale of the Patio brand. J&J relies principally upon the Due Diligence and Review Period provision of the LOI, which maintains in relevant part that "[e]ach party shall use commercially reasonable good faith efforts to assist the other party and cooperate ... in connection with any steps required to be taken as part of their respective obligations hereunder or under the Definitive Agreement..." (LOI at ¶ 4.) However, J&J disregards a later section of the LOI clearly labeled "No Binding Agreement," in which the letter provides that "[t]his Letter reflects the intention of the Parties, but for the avoidance of doubt neither this Letter nor its acceptances shall give rise to any legally binding or enforceable obligation on any party, except with regard to Paragraphs 7(b), 8), 10), 11), and 13), hereto."[1]  Id.

---

[1] None of these provisions conflict with the Court's conclusion that the LOI did not give rise to a contract.  There is no Paragraph 7(b) in the LOI.  Paragraph 8 deals with termination of the LOI and which provisions survive termination.  Paragraph 10 is a governing law provision; Paragraph 11 concerns

at ¶ 14.   Indeed, the LOI maintains that "[n]o contract or agreement providing for any transaction... shall be deemed to exist... unless and until the Definitive Agreement has been executed and delivered."   <u>Id.</u>   No "Definitive Agreement" was reached.

Moreover, the Confidentiality Agreement contains a parallel clause which provides that "unless and until a definitive agreement... has been executed and delivered, the Disclosing Party [J&J] will be under no legal obligation of any kind whatsoever with respect to the Transaction, including, without limitation, any obligation to (i) consummate the Transaction..." <u>See</u> <u>Ex. B</u> at ¶ 3.   In other words, the Confidentiality Agreement provides that J&J can similarly terminate negotiations "for any or no reason." (<u>Id.</u>)

In light of the foregoing, J&J cannot bring a breach of contract claim after having expressly agreed that no contractually binding agreement to negotiate and consummate the sale exists.  Both the LOI and the Confidentiality Agreement impose no obligation to negotiate or consummate the sale and are dispositive in their intent to be non-binding, and both parties should have plainly understood that they were under no contractual obligation to consummate the sale at this point in

---

confidentiality; and Paragraph 13 concerns expenses.

time.  Indeed, when interpreting a contract, priority is given to the intent of the parties as reflected in the written agreement as a whole.  GMG Capital Invest., LLC v. Athenian Venture Partners I, L.P., 36 A.3d 776, 779 (Del. 2012), citing Paul v. Deloitte & Touche, LLP, 974 A.2d 140, 144 (Del. 2009). "The meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." In re G-I Holdings, Inc., 755 F.3d 195, 202 (3d Cir. 2014), citing E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co., 498 A.2d 1108, 1113 (Del. 1985).

Although the Confidentiality Agreement clearly states the parties' intentions not to be bound to negotiate or consummate a deal, it is an enforceable agreement as to the provision and use of confidential information given by J&J to Ruiz under its protections. The Confidentiality Agreement, for example, binds Ruiz to "keep the Evaluation Material [i.e., the confidential information defined in § 1(a) of the Confidentiality Agreement] strictly confidential and shall not sue the Evaluation Material for any purpose other than to evaluate, negotiate and consummate the Transaction," with certain possible exceptions not relevant here. Id. ¶ 2(a). The Confidentiality Agreement is also clear that Ruiz has the obligation to return or destroy all Evaluation Material to J&J upon written request, and that

9

"[n]otwithstanding the return or destruction of Evaluation Material, the Recipient [Ruiz] and its Representatives [as defined elsewhere] shall continue to be bound by their obligations of confidentiality and other obligations hereunder." (Id. ¶ 6.) Obviously, these obligations of Ruiz to preserve confidentiality survive the non-consummation of the sale. Finally, the Confidentiality Agreement provides a remedy for Ruiz's "breach or threatened breach" of this agreement and an acknowledgment by Ruiz that such a breach or threatened breach would cause J&J to "suffer significant and irreparable harm for which monetary damages would not serve as a sufficient remedy." (Id. ¶ 7.)

The Complaint alleges a breach of the Confidentiality Agreement. J&J alleges it furnished Ruiz "high level proprietary and confidential information regarding sales, earnings and customer information" pursuant to this agreement. (Compl. ¶ 12.) This information allegedly included "(1) ingredient specifications; (2) product formulas; (3) pricing information related to the production and sale of the Patio brand products; (4) gross dollar and case sales of Patio brand products organized by individual stock keeping unit (SKU); (5) EBIDTA from May 2011 until present; (6) gross sales by customer organized by SKU; (7) Walmart reset information; and (8) vendor lists." (Id. ¶ 16.) The Complaint finally alleges that, "[u]pon

10

information and belief, Ruiz improperly used J&J data for the purpose of competing unfairly with J&H." (Id. ¶ 25.)

The Complaint fails to allege the factual grounds for its claim of breach of the Confidentiality Agreement that would tend to give plausibility to the general allegation of breach. Which provisions of the Confidentiality Agreement were breached? Has Ruiz failed to destroy or return the data upon demand? Has Ruiz improperly used the data for its competitive advantage and in what ways? Has Ruiz threatened to improperly use or disclose such information? Defendant is entitled to such specification before the claim for breach of the Confidentiality Agreement can go forward against it.

In applying these requirements of Rule 12(b)(6), one should be mindful that the Complaint was originally filed in the Superior Court of New Jersey. The pleading requirements in the Superior Court have not adopted the federal Twombly/Iqbal standards for plausibility. See Banco Popular North America v. Gandi, 184 N.J. 161, 165 (2005) ("Rule 4:6-2(e) motions to dismiss should be granted only in the rarest of instances. Trial courts are cautioned to search the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim. . . . The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at

11

once painstaking and undertaken with a generous and hospitable
approach.") (internal citations omitted). It is fair that
Plaintiff in this removed case have an opportunity to meet the
pleading standards of the Federal Rules of Civil Procedure, if
it can do so. This Court cannot rule out the possibility that
Plaintiff could cure the present deficiencies with regard to the
claim for breach of the Confidentiality Agreement. Although
Plaintiff's claim presently falls short, the claim for breach of
the Confidentiality Agreement will be dismissed without
prejudice to Plaintiff's right to file a motion to reopen the
case and amend the Complaint within 21 days hereof. If no such
motion is timely filed, the dismissal of the breach of
Confidentiality Agreement claim will then be deemed to be with
prejudice.

Accordingly, the Court will dismiss Count I for failure to
state a claim upon which relief can be granted. The claim for
breach of the Letter of Intent will be dismissed with prejudice,
while the claim for breach of the Confidentiality Agreement will
be without prejudice to seeking leave to amend within 21 days
hereof.

### B. J&J has not alleged any factual basis to find that Ruiz has breached the implied duty of good faith & fair dealing.

In the alternative, J&J alleges that Ruiz breached the
implied covenant of good faith and fair dealing by acting in bad

faith.  Under Delaware law, an implied covenant of good faith
and fair dealing inheres in every contract.  Winshall v. Viacom
Intern., Inc., 55 A.3d 629, 636 (Del. Ch. 2011); see also
Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 756 (D.N.J.
2013).  The implied covenant "requires a party in a contractual
relationship to refrain from arbitrary or unreasonable conduct
which has the effect of preventing the other party to the
contract from receiving the fruits of the bargain." Winshall,
55 A.3d at 629 (internal citations omitted).  In order to state
a claim for breach of the implied duty of good faith and fair
dealing under Delaware law, a plaintiff must allege: (1) a
specific obligation implied in the contract; (2) a breach of
that obligation; and (3) resulting damages.  Gloucester Hldg.
Corp. v. U.S. Tape & Sticky Prods., LLC, 832 A.2d 116, 128 (Del.
Ch. 2003).  A party is liable for breaching the covenant where
its conduct "frustrates the overarching purpose of the contract
by taking advantage of [its] position to control implementation
of the agreement's terms." Id. (internal citations omitted).
One cannot claim a breach of the implied covenant for conduct
that is authorized by the agreement.  Nemec v. Shrader, 991 A.2d
1120, 1125-26 (Del. 2010).

     While there is an occasional need to imply contract terms
to protect the parties' reasonable expectations, imposition of
implied covenants "'should be [a] rare and fact-intensive'

13

exercise, governed solely by 'issues of compelling fairness.'"
Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 442 (Del.
2005). Only where it is clear from the parties' contract that
they "would have agreed to proscribe the act later complained of
... had they thought to negotiate with respect to that matter"
may a party invoke an implied duty of good faith and fair
dealing. Id.; see also Lonergan v. EPE Holdings, LLC, 5 A.3d
1008, 1018 (Del. Ch. 2010). Moreover, the "implied covenant
only applies to developments that could not be anticipated, not
developments that the parties simply failed to consider."
Nemec, 991 A.2d 1126; see also Airborne Health, Inc. v. Squid
Soap, LP, 991 A.2d 1120, 1126-27 (Del. 2010) ("[T]he implied
covenant only applies where a contract lacks specific language
governing an issue and the obligation the court is asked to
imply advances, and does not contradict, the purposes reflected
in the express language of the contract.") (internal citations
omitted).

In light of the fact-intensive nature of imposing implied
contractual terms, the Court will examine the relevant
provisions of the LOI in turn. The Proposed Definitive Agreement
in the LOI provides that "[a]s soon as reasonably practicable
... the Parties [J&J and Ruiz] shall commence to negotiate a
definitive purchase agreement (the "Definitive Agreement")..."
(LOI ¶ 2.) It continues that "[t]he Parties shall also commence

14

to negotiate ancillary agreements... including, but not limited
to (i) an escrow agreement, (ii) a bill of sale, and (iii) any
assignment and assumption agreement(s), if necessary." (Id.) By
J&J's own admission, Ruiz complied with LOI ¶ 2 through the
course of the negotiations.  Ruiz and J&J engaged in the
drafting and revision of the APA during July and August 2015.
(See Compl. at ¶¶ 16-18.)  J&J also acknowledges that Ruiz
posted in a mutually accessible data room the following
documents in connection with the sale by August 31, 2015: (i)
Post Closing Obligations – Draft Schedule; (ii) Bank of America
Merrill Lynch Escrow Template Agreement; (iii) Inventory
Verification Provisions; and (iv) Non-Competition Agreement.
(Id. at ¶ 20.)  To suggest that Ruiz's engagement in
negotiations was a sham is directly contradicted by the factual
foundation laid by J&J.

Additionally, the Due Diligence and Review Period provision
of the LOI provides in relevant part that "Buyer [Ruiz] shall
have a period of sixty (60) days after the Effective Date [July
7, 2015] of this Letter... the 'Review Period,' to complete an
executed Definitive Agreement and the closing of the
Transaction." (LOI at ¶ 4.)  In the same provision, the LOI
adds that "[b]uyer [Ruiz] shall have the right to terminate...
if Buyer's due diligence review is not satisfactory to Buyer, in
its sole discretion, for any reason or no reason..." (Id.)  It

15

remains undisputed that Ruiz terminated negotiations towards the sale on September 1 of 2015, approximately fifty-six days into the sixty-day Review Period.  (See Compl. at ¶ 21.)  It is clear from the plainest reading of the LOI that Ruiz timely terminated negotiations. Therefore, Ruiz is in direct compliance with the non-binding LOI.

Looking beyond the LOI terms that are explicitly contrary to what J&J seeks, there is no compelling reason of fairness to impose the implied covenant of good faith.  Both parties are sophisticated entities that were represented by counsel.  They agreed Ruiz could terminate negotiations "in its sole discretion for any reason or no reason," as noted above. Indeed, J&J fails to factually allege how Ruiz engaged in bad faith behavior beyond merely stating that Ruiz terminated the sale. Imposing such an implied covenant here would effectively contradict Ruiz's negotiated right to terminate "for any reason or no reason," particularly where J&J enjoyed a similar right as expressed in the parties' Confidentiality Agreement.

J&J's circular reasoning that because Ruiz is a competitor, it must have entered into negotiations in order to compete unlawfully is precisely the type of factually unsupported conclusory allegation rejected under Twombly and Iqbal's plausibility standard.  See Smith v. State Farm Mut. Auto Ins. Co., 506 Fed. Appx. 133, 137 (3rd Cir. 2012) (dismissing bad

faith claim because conclusory statements were unsupported by any facts); Chemtech Intern., Inc. v. Chem. Injection Tech., Inc., 170 Fed. Appx. 805, 808 (3d Cir. 2006) ("While a plaintiff may rely on the court to draw all reasonable inferences in his favor at the Rule 12(b)(6) stage, a plaintiff who relies on the court to fill in the blanks for all of the information missing in his complaint does so at his peril."). The mere potential to unlawfully compete is not sufficient to survive a motion to dismiss.  Had J&J alleged a factual basis for breach of confidentiality, the Court might be justified in finding at this stage that Ruiz engaged in negotiations in bad faith, but J&J entirely fails to do so.  There is currently no factual basis that Ruiz has misused J&J's confidential information, and no other reason to find bad faith on Ruiz's part.

Accordingly, the Court will dismiss Count II for failure to state a claim upon which relief can be granted.[2]

**IV. CONCLUSION**

For the foregoing reasons, the Court will dismiss J&J's complaint for failure to state claims against Ruiz upon which relief can be granted. This dismissal will operate with prejudice because amendment would be futile,[3] except that

---

[2] Because the Court will dismiss Plaintiff's complaint, the Court need not reach Plaintiff's request for injunctive relief.
[3] Where a complaint fails to state a claim, the Court need not give Plaintiff an opportunity to amend the complaint where the amendment would be futile.  Phillips v. County of Allegheny, 515

dismissal of Plaintiff's claim that Ruiz breached the
Confidentiality Agreement is without prejudice to Plaintiff's
right to seek to reopen the case and to propose an Amended
Complaint curing the noted deficiencies on this point within 21
days hereof. An accompanying Order will be entered.


**February 29, 2016**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge

---

F.3d 224, 228 (3d Cir. 2008).

18